IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALBERT D. TANNER,

      Petitioner,

    v.                            Case No. 2:05-cv-00076
                                       JUDGE GRAHAM
JEFFERY WOLFE, Warden,          Magistrate Judge KING

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the amended petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that all of petitioner's claims, with the exception of his claim that his sentence violated *Blakely,* be **DISMISSED**. The Magistrate Judge further **RECOMMENDS** that the petition for a writ of habeas corpus be conditionally **GRANTED** on petitioner's claim that his sentence violated *Blakely*, and that petitioner's sentence be **VACATED** and petitioner released from incarceration unless the State of Ohio re-sentences him within ninety (90) days.

## I. FACTS

The Ohio Fifth District Court of Appeals summarized the facts of this case as follows:

> At trial, the State presented evidence that on September 16, 2002, someone stole a white Pontiac Grand Prix from the Route 22 Auto Lot after breaking through a window. Three witnesses testified they had seen the appellant driving this vehicle on the same evening. Several employees of AK Steel also observed a person matching the general description of appellant driving the white Grand Prix. The

person they observed appeared to be going through vehicles in the parking lot, taking things from the employees' cars. After AK Steel's security called police, the individual fled, pursued by Officers Suici and Groves. The officers determined from the license plate of the vehicle that it was the vehicle stolen from Route 22 Auto Sales. The officers testified the driver of the vehicle ran stop signs and was traveling very fast. Because there were other vehicles on the road, the officers pursued the vehicle only for about a minute.

Thereafter, the driver abandoned the vehicle and took off running. Various officers participated in the chase, and described the runner as a white male, approximately 5'10", medium build, wearing a black or navy tee shirt. Witnesses observed appellant running away from Officer Keck, who also later identified the runner as the appellant. Officers found a black tee shirt lying in the intersection of Forest and Euclid Avenue, which Officer Keck identified as being similar to the one appellant was wearing. A forensic specialist testified certain bodily secretions on the tee shirt matched the appellant's DNA.

Exhibit 5 to Return of Writ.

## II.  PROCEDURAL HISTORY

Petitioner was indicted by the October 2002 term of the Muskingum County grand jury on one count of breaking and entering, in violation of O.R.C. §2911.13(A), two counts of theft, in violation of O.R.C. §2913.A(1), two counts of receiving stolen property, in violation of O.R.C. §2913. 51(A), and two counts of failure to comply with the order or signal of a police officer, in violation of O.R.C. §2921.331(B).  Exhibit 1 to Return of Writ.  While represented by counsel, petitioner proceeded to jury trial.  He was found guilty on

two counts of receiving stolen property in violation of R.C. 2913.02 and R.C. 2913.51, and two counts of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331.... The jury returned acquittals on one count of breaking and entering in violation of R.C. 2911.13, and two counts of theft in violation of R.C. 2913.02.

Exhibit 5 to Return of Writ.  Petitioner was sentenced to six years incarceration.  Exhibit 2 to Return of Writ.  Represented by new counsel, petitioner filed a timely appeal.  He asserted the following

2

assignments of error:

> 1.  THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT ON VIOLATIONS OF 2921.331 TO A MAXIMUM SENTENCE AND IGNORED THE SENTENCING FACTORS IN SAID STATUTE.

> 2.  THE TRIAL COURT ERRED IN A FINDING OF GUILTY TO COUNT FOUR IN THAT THE OPERATION OF SAID VEHICLE DID NOT CAUSE A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM TO PERSONS OR PROPERTY, AND SUCH FINDING BY THE JURY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> 3.  THE TRIAL COURT ERRED IN ALLOWING THE CHARACTER TYPE EVIDENCE THAT WAS IRRELEVANT, OVERLY PREJUDICIAL, AND ONLY PORTRAYED THE APPELLANT IN A BAD LIGHT IN CONTRAVENTION OF THE RULE OF EVIDENCE 404.

> 4.  THE TRIAL COURT ERRED IN ALLOWING CERTAIN POLICE TESTIMONY AND RECORDS TO COME INTO EVIDENCE AS 'BUSINESS RECORDS' CONTRARY TO EVIDENCE RULE 803(8).

> 5.  THE STATE OF OHIO VIOLATED THE APPELLANT'S PRIVILEGE AGAINST SELF-INCRIMINATION BY COMMENTING UPON HIS FAILURE TO TESTIFY THUS PREVENTING THE APPELLANT FROM HAVING A FAIR TRIAL.

Exhibit 5 to Return of Writ.  On December 24, 2003, the appellate court affirmed the judgment of

the trial court.  *Id.*  Petitioner filed a timely *pro se* appeal of the appellate court's decision to the

Ohio Supreme Court.  He raised the following propositions of law:

> 1.  The trial court, Clerk of Appeals Court/Muskingum Co. Clerk of Court, and appellate counsel violated appellant's constitutional right(s) Due Process of Law U.S. Const. Amend. 14, Ohio Const. Art. I §2 and the effective assistance of counsel U.S. Const. Amend. 6 Ohio Const. Art. I §10.

> 2.  The appellant's constitutional right(s) protected by U.S. Const.,

3

Amend. 5, Ohio Const. Art. I §10 Double Jeopardy was departed from by the trial court Equal Protection [sic] of Law U.S. Const. Amend. 5 Ohio Const. Art. I §10 was violated.

3. Appellant's cons[titutional] rights were violated.... Ineffective assistance of counsel and right to confrontation....

4. Did the Court of Appeal[s] violate appellant's constitutional rights to due process.... cruel and unusual punishment [?]

Exhibit 6 to Return of Writ. On May 12, 2004, the Ohio Supreme Court denied leave to appeal and

dismissed the appeal as not involving any substantial constitutional question. Exhibit 8 to Return

of Writ. On March 19, 2004, petitioner filed a *pro se* delayed appeal pursuant to Ohio Appellate

Rule 26(B). He asserted that he was denied the effective assistance of appellate counsel because his

attorney failed to raise the following claims on appeal:

1. For not raising the claim that [the] trial court never complied [with] the purpose of sentencing a[n] offender to a third degree felony and appellant's sentence is contrary to O.R.C. §2929.11 through §2929.19.

2. For failing to object to the court of appeals' reason for overruling appellant's second assignment of error.

3. For failing to raise appellant's sole purpose of filing this appeal, maximum sentence, whether the sentence imposed is consistent with sentence imposed for similar offense committed by similar offenders.

4. For not raising a constitutional claim that appellant's conviction for the violation of §2921.331(C) was barred by appellant's constitutional guarantee against being twice put in jeopardy, implied acquittal of lesser included offense.

5. For making a plain misstatement of facts in appellant's appeal brief and fail[ing] to fully litigate appellant's manifest weight of evidence claim in appellant's second assignment of error.

6. For not filing a constitutional claim that the appellant was denied the right to confront witnesses under U.S. Const. Amend. 6 and Ohio Const. Art. I §10.

4

7. For not raising objection to the appellate court's opinion in overruling appellant's third assignment of error after the Fifth District determined that trial counsel failed to object to most of the evidence, and reviewed this under a plan error analysis Crim. R. 52(B).

8. For failing to raise constitutional claim on grounds of double jeopardy, retrial after prosecutorial misconduct, or unreasonable declaration by judge.

9. For failing to raise constitutional claim that appellant was denied his rights to a fair trial, perjurious testimony.

10. For not raising claim that the State of Ohio acted as the 13th juror when trial judge *sua sponte* declared mistrial without cause.

11. For not properly litigating appellant's first assignment of error, which resulted in the appeals court making a determination on an issue not argued in that claim, appellate counsel further failed to raise objection.

12. For failing to object to the appellee brief for misstating the sequence of facts in the event of the case to make it appear there w[ere] victims.

13. For failing to raise a constitutional claim that the State of Ohio used perjur[ed] testimony when they knew the testimony was perjured or had the obligation to learn that the testimony was perjured.

14. For failing to raise objection to the Fifth District Court of Appeals' opinion that the sentencing court made all the required findings to support a maximum sentence is [sic] in conflict with opinion from other Ohio appellate court reviews.

15. For not raising constitutional claim nor fully litigating constitutional claims in appellant's direct appeal, that appellate counsel failed to have the entire transcripts filed, that appellate counsel never fully litigated the appellant's fifth assignment of error, for failing to raise ineffective assistance of trial counsel claim that is clearly in the record, for failing to raise claim of insufficient evidence that the trial court erred in not granting appellant's Evid. Rule 29 motion to dismiss.

Exhibit 9 to Return of Writ. On May 3, 2004, the appellate court denied petitioner's application.

5

Exhibit 11 to Return of Writ. Petitioner apparently never filed an appeal of the appellate court's decision to the Ohio Supreme Court. Meanwhile, on November 21, 2003, petitioner filed a petition for post conviction relief with the state trial court. He asserted the following claims:

> 1. The State of Ohio erred by allowing the use of fabricated evidence and falsified testimony in petitioner's jury trial. This resulted in prosecutorial misconduct. This deprived petitioner [of] his fundamental right to a fair trial and due process under the Fourth and Fifth Amendment... in that the outcome of the juror [sic] verdict would have been different.

> 2. The petitioner now argues that the outcome of the jury decision would have been different if the State of Ohio would not [have] withheld and denied... critical evidence. This is in violation of the petitioner's 14th Amendment [right] to due process and denied the petitioner his fundamental right to a fair trial.

> 3. The State of Ohio erred in allowing photo array and photo of car as evidence in petitioner's second jury trial after prosecutorial misconduct concerning the use of the photo array resulting in a mistrial. This [was] in violation of petitioner's due process rights, and Fourth and Fifth Amendment rights.

> 4. Ineffective assistance of counsel.

> Trial counsel failed to object to improper statements made by prosecutor during closing arguments.

> 5. The trial court abused its discretion in sua sponte declaring a mistrial and ordering a new trial on grounds that the mistrial was a result of prosecutorial misconduct, this being in violation of... [the] Double Jeopardy Clause....

Exhibit 12 to Return of Writ. On January 14, 2004, petitioner filed an amendment to his petition.

Exhibit 13 to Return of Writ. On January 22, 2004, the trial court denied petitioner's post conviction petition. Exhibit 15 to Return of Writ. Petitioner filed a timely appeal. He asserted the following claims:

> 1. Trial counsel was ineffective for failing to object or motion for a

6

dismissal when the trial court judge erroneously acted as a 13th juror when *sua sponte* declaring a mistrial without cause.  Appellant's constitutional rights of being twice put in jeopardy was violated.

2.  Trial counsel was ineffective for failing to object to the State of Ohio uses of perjured testimony which resulted in the witnesses changing their testimony in the second trial and constructing it to fit the charges and mislead the jury.

3.  Trial counsel was ineffective for failing to object to a new trial on grounds that the prosecutor's misconduct in presenting the marked photo array to the witnesses, making... use of the photo array in the second trial suggestive [sic] in that witnesses not tainted.

4.  Trial counsel was ineffective for failing to object to the State of Ohio declaring a mistrial, and should have moved the trial court to first apply proper remedy and instruct the jury on the issues arising from the State's representation of its error in presenting its case to the jury.

5.  Trial counsel was ineffective for failing to investigate appellant's claim that the State falsified evidence, that appellant's black T-shirt was taken from him for evidence after he was arrested and after officers claimed they found a black T-shirt.

6.  Trial counsel was ineffective for failing to argue that the State knowingly withheld favorable evidence.

7.  Trial counsel was ineffective for failing to object or argue [that] the State intentionally allowed admitted evidence withheld from the jury.

Exhibit 16 to Return of Writ.  On August 31, 2004, the appellate court affirmed the judgment of the trial court.  Exhibit 19 to Return of Writ.  Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  He raised the following propositions of law:

1.  Trial counsel was ineffective.

> 2.  Trial counsel was ineffective in the second trial.[1]

Exhibit 20 to Return of Writ.  On January 26, 2005, the Ohio Supreme Court declined jurisdiction

to hear the case and dismissed the appeal as not involving any substantial constitutional question.

Exhibit 22 to Return of Writ.  In December 2004, petitioner filed a second post conviction petition

with the state trial court.  He asserted the following claims:

> 1.  The sentence imposed is contrary to Ohio law and therefore void
> under the Fifth and Fourteenth Amendment's due process and equal
> protection clauses.
>
> 2.  The sentence imposed is void pursuant to the Fifth, Sixth and
> Fourteenth Amendments under the United States Constitution and
> under *Blakely v. Washington* (2004), 124 S.Ct. 2531[.]
>
> 3.  The sentence is void pursuant to the Sixth Amendments guarantee
> of effective assistance of counsel throughout the criminal process,
> made obligatory upon the state by the Fourteenth Amendment of the
> United States Constitution.

Exhibit 23 to Return of Writ.  On March 24, 2005, the trial court denied the petition as untimely.

Exhibit 24 to Return of Writ.  Petitioner again filed a timely appeal of the trial court's decision to

the state appellate court.  He asserted the following claims:

> 1.  The trial court committed prejudicial reversible error pursuant to
> United States Constitution Article VI, and [the] Fifth, Sixth, and
> Fourteenth Amendments of the United States Constitution.
>
> 2.  The trial court committed prejudicial reversible error pursuant to
> the United States Constitution under the Fifth and Fourteenth
> Amendment's due process and equal protection clauses, O.R.C.
> §2929.14(A)(3), (E)(3), (4), and 2953.08(C) and Criminal Rule 52(B)
> and 32(A).

_____

[1]  Among petitioner's allegations was the allegation that trial counsel was ineffective for
failing to object to the trial court's fact-finding at sentencing, in violation of petitioner's Sixth
Amendment right to trial by jury.  Exhibit 20 to Return of Writ, at p.14.

8

Exhibit 25 to Return of Writ. On September 27, 2005, the appellate court affirmed the judgment of the trial court. Exhibit 27 to Return of Writ. Again, petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

> 1. Pursuant to Article VI of the United States Constitution, all state court judges are bound by the federal constitution, laws and its treaties.

> 2. The Supreme Court of the United States has found the federal sentencing statutes to be unconstitutional. Ohio's sentencing statutes are similar to the federal system and are likewise unconstitutional.

> 3. Defendant-appellant that has been deprived [of] his constitutional right [to] the effective assistance of trial and appellate counsel has been deprived his constitutional rights of due process of law and equal protection of law.

Exhibit 28 to Return of Writ. On January 25, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit 30 to Return of Writ.

On January 24, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.[2] He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. O.R.C. §2921.331(B), (C) is unconstitutional in its additional ... sentencing factors, and section (D) is in conflict with the governing sentencing principle of O.R.C. 2929.14(E)(3), thus making petitioner's sentencing contrary to federal law. *See Blakely v. Washington* (2004), 542 U.S. 2531 [sic]; *United States v. Booker....*

> 2. Petitioner's direct appeal is unconstitutional because it was based on an incomplete record.

---

[2] On September 8, 2005, proceedings were stayed so that petitioner could exhaust state court remedies. *See* Doc. Nos. 18, 20. On February 13, 2006, proceedings were reactivated at petitioner's request. Doc. No. 24.

3.  The Fifth District Court of Appeals' judgment is plain error in petitioner's 1, 2, 3, 4 claims.[These claims will be set forth clearly in... petitioner's objections to the respondent's motion to stay proceedings].

The appellate court failed to recognize plain error on consecutive sentencing in this case pursuant to petitioner being sentenced on the felony of the highest degree to more than the maximum allowed.... [T]he record does not support the worst form of the offense, and is in conflict with the definition of substantial risk, strong possibility of serious physical harm when the P.S.I. showed only a significant possibility.

*Petition; Amended Petition*, Doc. No. 17.

I.  The trial court erred in sentencing the appellant on violations of 2921.331 to a maximum sentence and ignored the sentencing factors in said statute.

II.  The trial court erred in finding of guilty to count four in that operation of said vehicle did not cause a substantial risk of serious physical harm to person or property, and such finding by the jury [was] against the manifest weight of the evidence.

III.  The trial court erred in allowing the character type evidence that was irrelevant, overly prejudicial, and only portrayed the appellant in a bad light in contravention of the rule of evidence 404.

IV.  The trial court erred in allowing certain police testimony and records to come into evidence as business records contrary to Evidence Rule 803(8).

*See Petitioner's Objections to Stay of Proceedings,* Doc. No. 16.  On July 13, 2005, petitioner filed

a request to amend the petition, which request was granted, to include the following additional

claim:                    4.  Petitioner was denied his Sixth Amendment right
                          to the effective assistance of trial counsel.

A.  This is the fruits of the first trial of February 25th in case number CR2002-0264.  Counsel was ineffective for negotiating for a mistrial on a defense motion, off the court record (when a request by defense counsel for a mistrial was not necessary).  Counsel did so for his

personal interest because he received a family emergency call during... trial proceedings.  Counsel failed to perceive that the trial court was required to declare a mistrial on its own motion when defense objected to the photo array used by the State that caused confusing and perjurious testimony of many state witnesses on a material subject "identification."  It was the trial court's duty to declare a mistrial on its own motion when trial counsel disclosed to the trial court that the state was using a photo array marked with defendant's name beside his picture.... Counsel erred in agreeing to a retrial and should have argued double jeopardy claims on prosecutorial misconduct.

B.   Counsel erred [in] not securing his client's best interest and moving the trial court for a charge to the jury concerning the identification testimony....

C.  Counsel was ineffective for not asking for jury instructions and continuing the trial as defendant demanded.  Instead counsel stood by and allowed the trial court to deprive defendant of his constitutional rights to have his case resolved by the jury of his choosing....

D.  Counsel was ineffective for not arguing... that the photo array had been marked after it was inspected by the defense and trial court.... that the state tactics and... errors therefrom did [require] a dismissal of the indictment....

E.  Counsel was ineffective for failing to have filed a timely motion to suppress certain identification evidence and testimony and untimely filed the motion only 25 minutes before the start of the second trial....

G.[3]  The following is the fruits from the second trial of March 18, 2003 in case number CR2002-0264.

Counsel failed to effectively use the first trial record to impeach more than 2 witnesses when they testified in the second trial inconsistently....

H.  Counsel was ineffective for failing to object to the state's closing argument....

---

[3] Petitioner omitted "F" in identifying his claims of ineffective assistance of counsel, and the Court has followed petitioner's identification of his claims here.

The following is the fruits of the sentencing hearing on April 14, 2003.

a.  Counsel was ineffective at the sentencing hearing and failed to argue that defendant's sentence is contrary to law....

b.  Counsel failed to object at the sentencing hearing that the jury found defendant guilty on two counts under the same statutes... a greater and a lesser offense, and the court disregarded defendant's substantial right pursuant to R.C. §2901.04 and sentenced defendant on the greater offense....

c.  Counsel was ineffective at the sentencing hearing for failing to argue that the trial judges findings of additional facts.... [violated] *Blakely*.

*See Amended Petition,* Doc. No. 17.  On February 10, 2006, petitioner filed a second motion to amend his petition, which motion was granted, to include the following additional claims:

5. Pursuant [to] Article VI of the United States Constitution, all state court judges are bound by the federal constitution, laws and its treaties....

6. The Supreme Court of the United States has found the federal sentencing statutes to be unconstitutional.  Ohio's sentencing statutes are similar to the federal system and are likewise unconstitutional.

7. Defendant-appellant has been deprived his constitutional right of the effective assistance of trial counsel and appellate counsel [and] has been deprived his constitutional rights of due process and equal protection of law.  U.S.C.A. Const. V, VI, and XIV.

*Second Amended Petition*, Doc. No. 23.  It is the position of the respondent that all of petitioner's claims are procedurally defaulted and without merit.

## II.  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims

to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id.*  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Id.*  Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *Id.*  This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

## A. *BLAKELY* CLAIMS

13

In claims one, five, and six, petitioner asserts that his sentence violates *Blakely*.[4] In claim seven, petitioner asserts that he was denied the effective assistance of trial and appellate counsel due to his attorneys' failure to object to his sentence as violative of *Blakely* and failure to raise such issue on direct appeal. In claim four, petitioner again asserts, *inter alia*, that he was denied the effective assistance of trial counsel due to his attorney's failure to object to his sentence as violative of *Blakely*. It is the position of the respondent that all of the foregoing claims are procedurally defaulted because petitioner failed to raise such claims on direct appeal and instead first presented such claims to the state courts in his second petition for post conviction relief, which was dismissed as untimely.[5]

Petitioner was sentenced on April 17, 2003, and the Ohio Supreme Court dismissed his appeal on May 12, 2004, prior to the United States Supreme Court's June 24, 2004, decision in *Blakely*. Therefore, petitioner's assertion in claims four and seven that his trial and appellate counsel were ineffective because they failed to raise a *Blakely* issue at sentencing or on direct appeal is without merit. *See United States v. Burgess,* 142 Fed.Appx. 232, unpublished 2005 Fed.App. 0531N (6 Cir. June 22, 2005)(failure to anticipate *Blakely* or *Booker* does not constitute ineffective assistance of counsel).

> Competence, not prescience, is what the constitution requires. *See*
> *United States v. Bradley,* 400 F.3d 459, 463 (6th Cir.2005) ("[W]here
> developments in the law later expand a right that a defendant has
> waived in a plea agreement, the change in law does not suddenly

---

[4] To the extent that petitioner asserts that his sentence violated state law, such claim is addressed *infra,* with claim three of the petition.

[5] Respondent also contends that *Blakely*, which is not retroactively applied to cases that were final at the time *Blakely* was decided, is not applicable to this case. *Return of Writ*, at 29-30. For the reasons stated *infra*, respondent is in error.

> make the plea involuntary or unknowing or otherwise undo its
> binding nature. A valid plea agreement, after all, requires knowledge
> of existing rights, not clairvoyance."); *Green v. United States,* 65
> F.3d 546, 551 (6th Cir.1995) (lawyer's failure to predict Sixth
> Circuit's approach to law did not constitute ineffective assistance of
> counsel); *United States v. Gonzalez-Lerma,* 71 F.3d 1537, 1542 (10th
> Cir.1995)( "Defendant faults his former counsel not for failing to find
> existing law, but for failing to predict future law. We agree ⋯ that
> clairvoyance is not a required attribute of effective representation.");
> *Nelson v. Estelle,* 642 F.2d 903, 908 (5th Cir.1981) (holding that
> "counsel is normally not expected to foresee future new
> developments in the law").

*Conley v. United States*, 2005 WL 1420843 (W.D.Mich. June 15, 2005).

That said, petitioner's conviction became final in only in August 2004, ninety days after the Ohio Supreme Court's May 12, 2004, dismissal of his appeal, upon expiration of the time to file a petition for a writ of *certiorari.  See Edgecomb v. United States*, 2006 WL 151895 (W.D. Michigan January 19, 2006):

> A case is considered final and no longer on direct review when a
> "judgment of conviction has been rendered, the availability of appeal
> exhausted, and the time for a petition for certiorari elapsed or a
> petition for *certiorari* finally denied." *Griffith v. Kentucky,* 479 U.S.
> 314, 321 n. 6 (1987).

*Id.; see also United States v. Saikaly,* 424 F.3d 514, 517 (6th Cir. 2005), citing *Humphress v. United States,* 398 F.3d 855, 860-63 (6th Cir. 2005).  Because petitioner's conviction was not yet final, and contrary to the argument of respondent, *see Return of Writ,* at 29-30, *Blakley,* which was decided in June 2004, applies to petitioner's sentence in this case.

Still, respondent contends that petitioner's claim that his sentence violated *Blakely* is procedurally defaulted because petitioner first presented his *Blakely* claims in an untimely and successive post conviction petition, which was denied by the state courts for failure to meet the

requirements of O.R.C. §2953.23.[6]  In response, petitioner argues that he presented his *Blakely* claim

at the first opportunity he could do so, *i.e.*, in his appeal to the Ohio Supreme Court from the

appellate court's August 31, 2004, denial of his first petition for post conviction relief.  *See*

*Traverse; Exhibit 20.*

Upon review of the entire record, the Magistrate Judge is not persuaded that petitioner

procedurally defaulted his *Blakely* claim.  Petitioner, a layman, reasonably fairly and promptly

presented his *Blakely* claims to the state courts.  Further, the state appellate court, in applying the

state procedural rule barring consideration of the merits of petitioner's *Blakely* claim, incorrectly

_____

[6]  O.R.C. §3953.23 provides in relevant part:

A) Whether a hearing is or is not held on a petition filed pursuant to section
2953.21 of the Revised Code, a court may not entertain a petition filed after the
expiration of the period prescribed in division (A) of that section or a second
petition or successive petitions for similar relief on behalf of a petitioner unless
both of the following apply:

(1) Either of the following applies:

(a) The petitioner shows that the petitioner was unavoidably prevented from
discovery of the facts upon which the petitioner must rely to present the claim for
relief.

(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of
the Revised Code or to the filing of an earlier petition, the United States Supreme
Court recognized a new federal or state right that applies retroactively to persons
in the petitioner's situation, and the petition asserts a claim based on that right.

(2) The petitioner shows by clear and convincing evidence that, but for
constitutional error at trial, no reasonable factfinder would have found the
petitioner guilty of the offense of which the petitioner was convicted or, if the
claim challenges a sentence of death that, but for constitutional error at the
sentencing hearing, no reasonable factfinder would have found the petitioner
eligible for the death sentence.

concluded that *Blakely* was inapplicable to petitioner's sentence.

As noted *supra*, the Ohio Supreme Court dismissed petitioner's direct appeal prior to the Supreme Court's decision in *Blakely*. Likewise, the state trial court denied petitioner's first post conviction petition on January 22, 2004, prior to *Blakely*. Therefore, petitioner did not act unreasonably in failing to raise his *Blakely* claim in those proceedings. *See Conley v. United States, supra,* 2005 WL 1420843. The state appellate court dismissed petitioner's post conviction appeal approximately two months after *Blakely*. Although petitioner did not attempt to amend his first post conviction appeal to include a *Blakely* claim, on October 12, 2004, he raised the *Blakely* issue in the context of ineffective assistance of counsel in the appeal to the Ohio Supreme Court from the dismissal of his first post conviction petition. *See* Exhibit 20 to Return of Writ. However, the Ohio Supreme Court does not ordinarily entertain claims not raised in the appellate court below, *see Mitts v. Bagley*, 2005 WL 2416929 (N.D. Ohio September 29, 2005)(habeas petitioner's failure to raise a claim in the Ohio Court of Appeals precludes review by the Ohio Supreme Court), citing *Fornash v. Marshall*, 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)(citing *State v. Phillips*, 27 Ohio St.2d 294, 302 (1971)).[7] Approximately two months later, in December 2004, petitioner filed a second petition for post conviction relief, asserting that his sentence violated *Blakely*. *See* Exhibit 22 to Return of Writ. The state appellate court affirmed the trial court's dismissal of such action as untimely:

> Appellant was convicted of two counts of receiving stolen property and two counts of failure to comply with an order of a police officer. Appellant was sentenced to the maximum sentence of five years of

---

[7] However, the Ohio Supreme Court has considered *Blakely* claims raised for the first time on appeal in that court. *See, e.g., State of Ohio v. Scranton Buchanan*, 2006 WL 3059911 (Ohio App. 7 Dist. October 26, 2006), and cases cited therein ("[I]t appears as if *Blakely* was raised for the first time to the Ohio Supreme Court and yet the Court still reversed and remanded that case for resentencing pursuant to *Foster.*")

imprisonment on the counts of failure to comply with an order and to a non-maximum sentence of one year of imprisonment on the two counts of receiving stolen goods. Appellant pursued a direct appeal and this court affirmed his conviction and sentence. *State v. Tanner*, Muskingum Appellate No. CT2003-0025, 2003-Ohio-7274.

On November 21, 2003, while his direct appeal was pending before this court, appellant filed a petition for post conviction relief. The trial court dismissed appellant's petition for post conviction relief. Upon appeal, this court affirmed the trial court's dismissal of appellant's petition for post conviction relief.

Subsequently, on December 6, 2004, appellant filed a second petition for postconviction relief. The trial court ruled on appellant's petition on March 25, 2005. The trial court found that this was appellant's second petition and, as admitted by appellant, that the petition was untimely. Accordingly, the trial court proceeded to consider whether appellant's petition fell under one of the exceptions for the filing of an untimely petition, pursuant to R.C. 2953.23. The trial court concluded that appellant's petition did not meet the requirements for filing a late petition and dismissed appellant's petition

**

... [T]his court will review whether the trial court had jurisdiction to consider appellant's appeal. In his petition, appellant conceded that the petition was subject to R.C. 2953.23(A). Unless the requirements of R.C. 2953.23(A) are met, the trial court has no jurisdiction to consider an untimely or second petition for post conviction relief. *State v. Warren* (Dec. 14, 2000), Cuyahoga App. No. 76612; *State v. Valentine* (Dec. 7, 2000), Cuyahoga App. No. 77882; *State v. Wheatt* (Oct. 26, 2000), Cuyahoga App. No. 77292; *State v. Gaddis* (Oct. 12, 2000), Cuyahoga App. No. 77058.

Revised Code 2953.23(A) provides as follows, in pertinent part:

"Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for

18

similar relief on behalf of a petitioner unless....

"Both of the following apply:

"(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

"(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for the constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence. R.C. 2953.23(A)(1).

Appellant filed this second petition for postconviction relief based upon *Blakely v. Washington* (2004), 542 U.S. 296.... and *State v. Comer,* 99 Ohio St.3d 463, 793 N.E.2d 473. Based upon our review of the record, we agree with the trial court's finding that appellant has failed to meet the requirements of R.C. 2953.23(A)(1)(a).

First, the *Blakely* decision has no application in the case *sub judice*. In *Blakely*, the Supreme Court held that to avoid a violation of the Sixth Amendment to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey* (2000), 530 U.S. 466, 490...) However, in this case, the trial court did not sentence appellant to any term beyond the statutory maximum. Therefore, the *Blakely* decision does not apply. *See State v. Hoke*, Knox App. No. 05CA5, 2005-Ohio-3548. Appellant was not sentenced to more than the prescribed statutory maximum sentence. Further, appellant was not unavoidably prevented from discovering the facts upon which

appellant must rely to present the claim for relief. Thus, appellant has not met the requirements of R.C. 2953.(A)(1)(a).

In *Comer,* the Ohio Supreme Court stated that a trial court is required to make the statutorily enumerated findings on the record during sentencing. *Id.*, at paragraphs one and two of the syllabus. However, appellant was not unavoidably prevented from discovery of the facts upon which the petitioner must rely to present such a *Comer* claim nor is *Comer* a United States Supreme Court decision recognizing a new federal or state right that applies retroactively to persons in the petitioner's situation. As such, appellant has not met the requirements of R.C. 2953.23(A)(1)(a) on this claim either.

Appellant cannot meet the requirements of R.C. 2953.23(A)(1)(b) either. The issues raised by appellant do not relate to his conviction or to a death sentence. *State v. Graber,* Stark App. No. 2004CA00344, 2005-Ohio-2413.

Accordingly, this court finds that the trial court correctly found that it was without jurisdiction to consider appellant's petition for postconviction relief.

Exhibit 27 to Return of Writ (footnote omitted).

Thus, the state appellate court held that petitioner failed to meet the requirements of §2953.23(A)(1)(a) for an untimely and successive post conviction petition by concluding that *Blakely* did not apply to petitioner's sentence because he was sentenced within the statutory maximum for the offenses of conviction. This reasoning was incorrect because *Blakely* defined "statutory maximum" as:

not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Blakely v. Washington, supra,* 542 U.S. at 303. Further, the Ohio Supreme Court has since held that

20

Ohio's statute relating to, *inter alia,* nonminimum sentences, O.R.C. §2929.14(B), is unconstitutional because it requires judicial findings of fact not proven to a jury. *State v. Foster*, 109 Ohio St.3d 1 (2005). In sum, the state appellate court misapplied *Blakely* to enforce the procedural rule barring untimely and successive post conviction petitions and consideration of the merits of petitioner's *Blakely* claim.

Misapplication of the state court in enforcement of a procedural bar may warrant federal habeas corpus review of the merits of a claim.

> Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law.... Nevertheless, when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded.

*Greer v. Mitchell*, 264 F.3d 663, 674-75 (6th Cir. 2001)(citation omitted); *see also White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005)(refusing to enforce procedural default where state court's reliance on procedural rule was misplaced), citing *Hill v. Mitchell*, 400 F.3d 308, 6th Cir. 2005), and *Greer v. Mitchell, supra*. Similar circumstances are present here. Accordingly, the Magistrate Judge concludes that the first part of the *Maupin* test has not been satisfied. *See Dempsey v. Bobby*, 412 F.Supp.2d 720, 728 (N.D. Ohio 2005)(same). Accordingly, the Magistrate Judge will consider the merits of petitioner's claim that his sentence violated *Blakely*.

## B. MERITS

Petitioner asserts that his sentence violated *Blakely* because he was sentenced to non-minimum consecutive sentences under Ohio statutes that required judicial fact finding for imposition of such sentences. Upon review of the record, the Magistrate Judge agrees.

The trial court sentenced petitioner in relevant part as follows:

> The Court has considered the record, all statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code §2929.11 and its balance of seriousness and recidivism factors under Ohio Revised Code §2929.12.

> 3. Receiving Stolen Property (Motor Vehicle), a felony of the fourth degree, in violation of ORC §2929.13(B)

> 4. Failure to Comply with the Order or Signal of a Police Officer, a felony of the third degree, in violation of ORC §2929.13(C), and subject to a mandatory consecutive sentence

> 5. Failure to Comply with the Order or Signal of a Police Officer, a felony of the fourth degree, in violation of ORC §2929.331(B), subject to the sentencing guidelines of ORC §2929.13(B), and subject to a mandatory consecutive sentence

> 7. Receiving Stolen Property (License Plate), a felony of the fifth degree, in violation of ORC §2929.13(B).

> The Court finds that no presumption exists under division (C) of §2929.13; and finds that after consideration of the purposes and principles of sentencing under ORC §2929.11 and the factors under §2929.12, and §2929.13(B), the defendant has prior convictions, was on post release control when he committed the offenses herein, shows a lack of genuine remorse, has failed to acknowledge any responsibility for the offenses, and shows a propensity to commit future crimes. The Court after consideration of all of the factors finds that the defendant is not amenable to Community Control and that prison is consistent with the purposes of Revised Code §2929.11. The Court further finds that the defendant committed the most serious form of the offense; his failure to comply with the order of law enforcement officers resulted in a dangerous pursuit, thus, a minimum sentence would demean the seriousness of the offenses, would not adequately punish the defendant, nor adequately protect society. The Court further finds that pursuant to statute, any sentence imposed for the offense of Failure to Comply with the Order or

Signal of a Police Officer must be served consecutively.

The Court finds that counts three and seven shall merge, and the Defendant shall be sentenced on count three; in addition, counts four and five shall merge, and the Defendant shall be sentenced on count four.

\*\*\*

IT IS, THEREFORE, ORDERED that the Defendant serve the following sentences:

Count Three: a one (1) year prison sentence,

Count Four: a five (5) year prison sentence, which shall run consecutive to count three.

*Sentencing Entry,* Exhibit 2 to Return of Writ.

The Ohio Supreme Court held in *State v. Foster, supra*, that imposition of more than the minimum prison term or consecutive sentences under the applicable Ohio statutes required judicial fact finding that violated *Blakely*:

More than the Minimum Prison Term

... R.C. 2929.14(B)... states:

"[ *I*] *f the court* imposing a sentence upon an offender for a felony *elects or is required to impose a prison term* on the offender, the *court shall impose the shortest prison term* authorized for the offense pursuant to division (A) of this section [setting forth the basic ranges], *unless one or more of the following* applies:

"(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

23

"(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." (Emphasis added.)

Thus, Ohio has a presumptive minimum prison term that must be overcome by at least one of two judicial findings. For someone who has never been to prison before (not necessarily a first-time offender), the court must find that the shortest term will "demean the seriousness" of the crime or will inadequately protect the public; otherwise, the court must find that the offender has already been to prison to impose more than a minimum term. R.C. 2929.14(B)(2).

Under R.C. 2929.14(B), therefore, a court is not authorized to exceed the shortest prison term unless it makes the additional findings. *State v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (findings required, reasons not); *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473 (findings required for first offender). Since a jury verdict alone does not determine the sentence, R.C. 2929.14(B) violates *Blakely* principles.

The Maximum Prison Term

... R.C. 2929.14(C)... states that " *the court* imposing a sentence upon an offender for a felony *may impose the longest prison term* authorized for the offense pursuant to division (A) of this section *only* upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." (Emphasis added.)

 Although this statute does not use the word "findings," our holdings in *State v. Edmonson,* 86 Ohio St.3d at 329, 715 N.E.2d 131, and *State v. Evans,* 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, recognize that R.C. 2929.14(C) is mandatory and prohibits maximum sentences unless the required findings of fact are made beforehand. The First Appellate District applied an *Apprendi* and *Blakely* analysis to determine that judicial fact-finding to reach a maximum prison sentence was improper. It then applied the pertinent sentencing statutes without the unconstitutional findings and reduced the sentence to what it could have been without the judicial finding of "worst form of the offense," that is, one year less than the ten-year

24

maximum for a first-degree felony. *State v. Bruce,* 159 Ohio App.3d 562, 2005-Ohio-373, 824 N.E.2d 609, ¶ 9-10.

*Bruce* was correct in its analysis, if not in its solution. We have consistently held that R.C. 2929.14(C) requires that specific findings be made before a maximum sentence is authorized. *Evans,* 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, at ¶ 15; *Edmonson,* 86 Ohio St.3d at 325, 715 N.E.2d 131. As it stands, R.C. 2929.14(C) creates a presumption to be overcome only by judicial fact-finding. It does not comply with *Blakely.*

Consecutive Prison Terms

... R.C. 2929.14(E)(4) requires the court to find that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." In addition, at least one of three more findings of fact must be found: that the offender was already under control of the court due to an earlier conviction,[FN83] that at least two of the offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct,[FN84] or that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public."[FN85]

FN83. R.C. 2929.14(E)(4)(a).

FN84. R.C. 2929.14(E)(4)(b).

FN85. R.C. 2929.14(E)(4)(c).

While other state courts have held that their statutes on consecutive sentences do not violate *Blakely,*[FN86] Ohio appears to be unique in having a rule that sentences of imprisonment shall be served concurrently. See R.C. 2929.41(A); *State v. Barnhouse,* 102 Ohio St.3d 221, 2004-Ohio-2492, 808 N.E.2d 874, at ¶ 11. R.C. 2929.41(A) states, " *Except as provided in* division (B) of this section, *division (E) of section 2929.14,* or division (D) or (E) of section 2971.03 of the Revised Code, *a prison term,* jail term, or sentence of imprisonment *shall be served concurrently* with any other

prison term." (Emphasis added.) Thus, except for certain enumerated statutes imposing nondiscretionary consecutive terms,[FN87] judicial fact-finding must occur before consecutive sentences may be imposed under R.C. 2929.14(E)(4). We have held previously that R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) require trial courts that impose consecutive sentences to make the statutorily enumerated findings and to give reasons at the sentencing hearing to support those findings for review on appeal. *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.

FN86. See, e.g., *Smylie v. State* (Ind. 2005), 823 N.E.2d 679, 686-687; *State v. Abdullah* (2005), 184 N.J. 497, 512-514, 878 A.2d 746; *State v. Cubias* (2005), 155 Wash.2d 549, 120 P.3d 929.
FN87. R.C. 2929.14(E)(1) through (3).

Thus, with limited exceptions, the Ohio Revised Code provides that consecutive sentences in Ohio may not be imposed except after additional fact-finding by the judge. In *State v. Lett,* 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281, at ¶ 42, an *en banc* decision, the Eighth Appellate District held that *Blakely is* inapplicable to consecutive sentencing because "the facts found by the court do not increase the maximum penalty for an individual offense." This is true; nevertheless, because the total punishment increases through consecutive sentences only after judicial findings beyond those determined by a jury or stipulated to by a defendant, R.C. 2929.14(E)(4) violates principles announced in *Blakely.*

\*\*\*

Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas. As was reaffirmed by the Supreme Court in *Booker,* "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker,* 543 U.S. at 244, 125 S.Ct. 738, 160 L.Ed.2d 621.

Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and

26

2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional. Because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before repeat-violent-offender and major-drug-offender penalty enhancements are imposed, they are unconstitutional. *Apprendi,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Blakely,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

*Id.*, at 19-22 24.

The Court notes that the state appellate court's decision concluding that *Blakey* was inapplicable to petitioner's sentence is entitled to a presumption of correctness.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme

27

> Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005).

For the reasons discussed by the Ohio Supreme Court in *State v. Foster, supra,* 109 Ohio St.3d at 1, this Court likewise concludes that the trial court's imposition of maximum and consecutive sentences in this case violated *Blakely.* The state appellate court's decision concluding that *Blakely* is not applicable to petitioner's sentence was contrary to or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States and is therefore not entitled to a presumption of correction. 28 U.S.C. §2254(d)(1).

Accordingly, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be conditionally **GRANTED** on petitioner's claim that his sentence violated *Blakely,* and that petitioner's sentence be **VACATED** and petitioner released from incarceration unless the State of Ohio re-sentences him within ninety (90) days.

## C.  CLAIM FOUR

Petitioner asserts in claim four that he was denied the effective assistance of trial counsel on numerous grounds at the first trial (which ended in mistrial), at the second trial, and at sentencing. *See* Doc. No. 17.  As noted by respondent, all of these allegations are readily apparent from the face of the record and therefore should have been raised on direct appeal, where petitioner was represented by new counsel.  They were not, and petitioner may now no longer present such claims to the state courts under Ohio's doctrine of *res judicata.  See State v. Cole,* 2 Ohio St.3d 112 (1982);

*State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

Petitioner attempted to present some of his allegations of ineffective assistance of trial counsel to the state courts in his first petition for post conviction relief; however, the state courts explicitly refused to consider the merits of such claims because they had not been raised on direct appeal and were barred under Ohio's doctrine of *res judicata*.

Petitioner Albert D. Tanner appeals a judgment of the Court of Common Pleas of Muskingum County, Ohio, which dismissed his petition for post-conviction relief. Appellant does not articulate a formal assignment of error, but presents seven arguments in favor of his post-conviction petition:

"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT OR MOTION FOR A DISMISSAL, WHEN THE TRIAL COURT JUDGE ERRONIUSLY ACTED AS A 13TH JUROR WHEN SUA-SPONTA DECLARING A MISTRIAL WITHOUT CAUSE. APPELLANTS CONSTITUTIONAL RIGHTS OF BEING TWICE PUT IN JEOPARDY WAS VIOLATED. [SIC]

"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE STATE OF OHIO USES OF PERJURED TESTIMONY, WHICH RESULTED IN THE WITNESSES CHANGING THEIR TESTIMONY IN THE SECOND TRIAL AND CONSTRUCTING IT TO FIT THE CHARGES AND MISLEAD THE JURY. [SIC]

"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO A NEW TRIAL ON GROUNDS, THAT THE PROSECUTORS MISCONDUCT IN PRESENTING THE MARKED PHOTO ARRAY TO THE WITNESSES, MAKING THE USE OF THE PHOTO ARRAY IN THE SECOND TRIAL SUGGESTIVE, IN THAT WITNESSES WAS NOW TAINTED. [SIC]

"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OJBECT TO THE STATE OF OHIO DECLARING A MISTRIAL, AND SHOULD HAVE MOVED THE TRIAL COURT TO FIRST APPLY PROPER REMEDY AND INSTRUCT THE JURY ON THE ISSUES ARRAISING FROM THE STATES REPRESENTATION OF ITS ERROR IN PERSENTING ITS CASE TO THE JURY. [SIC]

29

"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE APPELLANTS CLAIM THAT THE STATE FALSEIFIED EVIDENCE, THAT APPELLANTS BLACK-T-SHIRT TAKEN FROM HIM FOR EVIDENCE AFTER HE WAS ARRESTED AND AFTER OFFICERS CLAIMED THEY FOUND A BLACK-T-SHIRT. [SIC]

"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ARGUE THAT THE STATE KNOWINGLY WITHHELD FAVORABLE EVIDENCE. [SIC]

"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT OR ARGUE, THE STATE INTENTIONLY ALLOWED ADMITTED EVIDENCE WITHHELD FROM THE JURY." [SIC]

The record indicates appellant was convicted of two counts of receiving stolen property and two counts of failure to comply with an order of a police officer. Appellant pursued a direct appeal, and this court affirmed his conviction and sentence, *see, State v. Tanner*, Muskingum Appellate No. CT2003- 0025, 2003-Ohio-7274.

On November 21, 2003, while his direct appeal was pending before this court, appellant filed his petition for post-conviction relief. The trial court permitted appellant to amend his petition, and appellant filed his amended petition for post-conviction relief on January 14, 2004.

The trial court did not conduct a hearing on the petition, but filed findings of fact and conclusions of law on January 22, 2004. The trial court found some of appellant's claims were raised on direct appeal, and others could have been raised on direct appeal. Further, the court found appellant did not present any new supporting evidence for any of his claims.

R.C. 2953.21 provides a person convicted of a criminal offense who claims there was such a denial or infringement of his rights as to render the judgment void or voidable may file a petition before the court which imposed sentence, to vacate the judgment or sentence.

In *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905, the Supreme Court found a trial court may deny a petition for post-conviction relief without holding an evidentiary hearing if the petition, any supporting affidavits, documents or evidence, files, and records do not demonstrate the petitioner has set forth sufficient

operative facts to establish substantive grounds for relief. In *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, the Supreme Court held a petition for post-conviction relief may be dismissed when the claims are barred by *res judicata*.

In his first argument, appellant urges the trial court erred in declaring a mistrial in his first trial, and trial counsel should have objected to a re-trial. The reason for the mistrial in the first case was the State used a photo array with appellant's name written next to his photo. Appellant urges re-trial was barred by the principles of double jeopardy. Appellee cites us to *Oregon v. Kennedy* (1982), 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416, where the United States Supreme Court held the state is not barred from re-trying an accused unless the mistrial was based upon prosecutorial misconduct intended to provoke a mistrial.

As the State points out, this matter could have been raised before us on direct appeal. Accordingly, the first argument is overruled.

In his second argument, appellant alleges the State used perjured testimony at trial. The State directs us to *State v. Moore* (1994), 99 Ohio App.3d 748, 651 N.E.2d 1319, which held a defendant must present new evidence that renders the judgment void or voidable and demonstrates he could not have appealed the claim based on information contained in the original record. Appellant did not present any new supporting evidence outside the record, so the trial court was limited to the record of the proceedings. We find the trial court was correct in finding there was no new evidence presented, and appellant did not demonstrate this claim could not have been raised on direct appeal.

The second argument is overruled.

Appellant next argues trial counsel was ineffective for failing to object to the photo array cited in I, *supra*. We find appellant could have raised this issue on direct appeal. The third argument is overruled.

Next, appellant argues trial counsel was ineffective for failing to object to the mistrial and re-trial. Appellant also argues the evidence presented was insufficient to warrant a new trial.

Appellant's direct appeal challenged the verdict as against the manifest weight of the evidence. We find the matter is *res judicata*.

31

The fourth argument is overruled.

In his fifth argument, appellant urges the black T-shirt the State offered into evidence at trial was not the same one the officers claimed they had found in the intersection of Forest and Euclid Avenue, along the route the accused was seen running on the night of the crime. Appellant argues instead, police officers came to the Zanesville City Jail and took his black T-shirt.

Appellee notes the evidence submission form does not substantiate appellant's allegations, and there is no evidence, other than his own self-serving declaration, that this occurred.

We find the trial court was correct in determining the evidence appellant offered in support of this argument was insufficient to demonstrate his claimed ground for relief.

The fifth argument is overruled.

In his sixth assignment of error, appellant argues the State of Ohio intentionally hindered his trial counsel's investigation in regards to the black T-shirt noted *supra*. Specifically, appellant alleges the prosecutor informed defense counsel the shirt had to be submitted for DNA testing, but later, the State told trial counsel it was not seeking DNA testing. Appellant urges this misinformation caused trial counsel not to investigate the claim made in V, *supra*. The State presented evidence about bodily secretions found on the T-shirt at trial.

The State responds that it provided the DNA results in sufficient time to permit appellant's counsel to prepare for trial, and in fact, appellant's evidence indicates defense counsel did review the findings. The State also suggests appellant could have raised this issue on direct appeal. We agree.

The sixth argument is overruled.

Finally, appellant argues the trial counsel was ineffective for failing to object to the State entering a video tape into evidence at trial. Again, this matter is in the original record, and could have been raised on direct appeal.

We find the trial court did not err in dismissing the petition for post-conviction relief.

32

Exhibit 19 to Return of Writ.  Petitioner also attempted to present other allegations of ineffective assistance of trial counsel for the first time on direct appeal to the Ohio Supreme Court, and on appeal to the Ohio Supreme Court in post conviction proceedings, *see* Exhibits 5, 6, and 20 to Return of Writ; however, petitioner did not thereby preserve these claims for habeas corpus review. As previously discussed, the Ohio Supreme Court does not ordinarily consider claims not raised in the Court of Appeals below, *see Mitts v. Bagley, supra*, 2005 WL 2416929 (N.D. Ohio September 29, 2005), citing *Fornash v. Marshall, supra,* 686 F.2d at 1185 n. 7, and did not address the merits of petitioner's claims.

Claim four is waived due to petitioner's failure to present such claim on direct appeal.  The state courts therefore were never given an opportunity to enforce the procedural rules at issue due to the nature of petitioner's procedural defaults.  This Court deems the first and second parts of the *Maupin* test to have been satisfied.

Again, the Court must also decide whether the procedural rules at issue constitute adequate and independent bases upon which to foreclose review of the petitioner's federal constitutional claims.  *See Maupin v. Smith*, 785 F.2d at 138.  Under this analysis, the procedural rules barring petitioner's claims for relief claims constitute adequate and independent state grounds for denying relief.  The state courts must be given a full and fair opportunity to remedy alleged constitutional defects.  The requirement that all available claims be asserted at the first opportunity serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest opportunity. Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine.  *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra*.

33

Petitioner can still secure review of his ineffective assistance of trial counsel claims on the merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violations that he alleges.  As cause for his procedural default, petitioner asserts the ineffective assistance of appellate counsel.  *Traverse*, at 77-79.  The ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Petitioner asserted the ineffective assistance of appellate counsel due to his attorney's failure to raise a claim of ineffective assistance of trial counsel in Rule 26(B) proceedings; however, petitioner failed to file a timely appeal of the state appellate court's May 3, 2004, decision denying his Rule 26(B) application to the Ohio Supreme Court, and Ohio does not permit delayed appeals in Rule 26(B) proceedings.  Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(b).  Therefore, because the claim of ineffective assistance of appellate counsel has not been preserved as a separate claim, it cannot constitute cause for petitioner's procedural default.  *Edwards v. Carpenter, supra.*

However, as cause for his failure to timely appeal the state appellate court's May 3, 2004, denial of his Rule 26(B) application to the Ohio Supreme Court, petitioner asserts that prison officials held his mail

> for 3 or more days to make sure petitioner had left money [i]n his account.  The reason the institution held the mail was that petitioner's shopping day was so close that had they processed the postage to send the mail before petitioner shopped, [and] had petitioner spent all his account money, they would not have secured their postage monies.  Petitioner did leave money for postage, however, [but] by the time the prison had sent it, the... deadline had expired.

*Traverse,* at 79.  Petitioner states that he thereafter

34

> sent a delayed notice of appeal and an affidavit stating the cause for delay, but the court stated they were prohibited from accepting delayed 26(B) filings.

*Id.*

In support of these allegations, petitioner has attached a June 25, 2004, letter from the Clerk of the Ohio Supreme Court indicating that petitioner had attempted to file an appeal, but had improperly failed to include the date of the entry of the judgment being appealed. The Clerk advised petitioner that the time period to appeal his Rule 26(B) application had expired:

> Please note if you were attempting to perfect an appeal of the attached April 21, 2004 decision or the May 3, 2004, decision, the time period to do so has expired. Specifically, the materials necessary to perfect your appeals would have been needed to be received within the 45 day time period prescribed by Rule II, Section 2(A)(1). The Clerk's office is prohibited from filing documents that are not submitted on time.

*Exhibit 17 to Traverse.* Petitioner has also attached a copy of his September 7, 2004, motion to file a delayed appeal of the appellate court's denial of his 26(B) application. *See Exhibit 18 to Traverse.* Finally, petitioner has attached a September 8, 2004, letter from the Clerk of the Ohio Supreme Court again advising petitioner that his attempted appeal was untimely, and that he had failed to submit the docket fee or a notarized affidavit of indigency in lieu of the fee. *Exhibit 19 to Traverse.* Petitioner has not attached any documents from the prison mail room, or from his prison account indicating whether or not he had access to sufficient funds at the time in question for timely mailing of his appeal.

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him... some objective factor external to the defense [that] impeded... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Failure by prison officials to promptly deliver legal mail may constitute cause for a procedural default. *See Maples v. Stegall, supra*, 340 F.3d at 438-39; *Norris v. Davis*, unpublished, 2006 WL 1581410 (E.D. Michigan May 3, 2006), citing *Maples v. Stegall, supra*; *Ivy v. Caspari,* 173 F.3d 1136, 1141 (8th Cir.1999); *Alexander v. Dugger*, 841 F.2d 371, 373 (11th Cir.1988); *but see Martin v. Vannatta,* unpublished, 145 Fed.Appx 45 (7th Cir. May 23, 2006)(rejecting petitioner's assertion that inadequate funds for postage constituted cause for his untimely filing where he could have obtained free postage.)

Assuming, *arguendo*, that petitioner can establish cause for his failure to timely appeal the denial of his Rule 26(B) application to the Ohio Supreme Court, the record nonetheless reflects that petitioner failed to fairly present in his 26(B) application the same allegations of ineffective assistance of trial counsel now raised in these habeas corpus proceedings. Therefore, the ineffective assistance of appellate counsel cannot constitute cause for the procedural default of petitioner's ineffective assistance of trial counsel claims.

Petitioner raised fifteen grounds of ineffective assistance of appellate counsel in Rule 26(B) proceedings. Only one of those claims raised an issue of ineffective assistance of trial counsel. Specifically, in claim fifteen of his Rule 26(B) application petitioner asserted that he had been denied the effective assistance of appellate counsel because his attorney failed :

> to raise ineffective assistance of trial counsel claim that is clearly in
> the record.

*Exhibit 9 to Return of Writ*, at iii. Petitioner offered no further specificity regarding this claim. In his memorandum in support, petitioner simply reiterated that appellate counsel should have raised ineffective assistance of trial counsel claims, and referred to the prosecutor's motion to dismiss petitioner's first post conviction petition. *See id.*, at 10. The state appellate court did not address

the merits of a claim of ineffective assistance of appellate counsel due to counsel's failure to raise

a claim of ineffective assistance of trial counsel on appeal, but denied the claim as follows:

> [I]n his fifteenth assignment of error, appellant argues appellate
> counsel did not fully litigate all of his constitutional claims in his
> direct appeal.  Again, appellant wishes to raise issues from his first
> trial, which ended in mistrial.  We find those issues are not properly
> before us.

Exhibit 11 to Return of Writ.

In *Baldwin v. Reese,* 541 U.S. 27 (2004), the United States Supreme Court held that the

petitioner failed to fairly present his federal claim to the state courts where he referred to the Sixth

Amendment in regard to his ineffective assistance of trial counsel claim, but failed to do so in

relation to his ineffective assistance of appellate counsel claim.  The Supreme Court held:

> [O]rdinarily a state prisoner does not "fairly present" a claim to a
> state court if that court must read beyond a petition or a brief (or a
> similar document) that does not alert it to the presence of a federal
> claim in order to find material, such as a lower court opinion in the
> case, that does so.

*Id.*, at 32.  Other courts have also held:

> "A 'fair presentment' of a petitioner's claims requires that a petitioner
> give state courts 'a meaningful opportunity to pass upon the
> substance of the claims [petitioner] later presses in federal court.' "
> *Spreitzer v. Schomig,* 219 F.3d 639, 645 (7th Cir.2000) (quoting
> *Howard v. O'Sullivan,* 185 F.3d 721, 725 (7th Cir.1999)). To satisfy
> that requirement, an inmate must present "both the operative facts
> and the legal principles that control each claim to the state judiciary."
> *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir.2001). *Ellsworth,* 248
> F.3d at 639.

*Harrison v. McBride*, 428 F.3d 652, 661 (7th Cir. 2005).

> Fair presentation "requires that the claim brought in federal court be

37

> the substantial equivalent of that presented to the state courts. Both the legal theory and the facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court." *Evans v. Court of Common Pleas,* 959 F.2d 1227, 1231 (3d Cir.1992) (citations omitted).

*Tome v. Stickman,* 167 Fed.Appx. 320, 323, unpublished, 2006 WL 357871 (3rd Cir., February 16, 2006).

Petitioner did not meet this standard here. Aside from referring to the prosecutor's motion to dismiss post conviction proceedings, petitioner completely failed to identify any specific issues of ineffective assistance of trial counsel which he alleged should have been raised on direct appeal.

### C.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case. Petitioner has waived his right to consideration by this Court of his allegations of ineffective assistance of counsel as presented in claim four.

### IV. CLAIM TWO

In claim two, petitioner asserts that he was denied due process because his direct appeal was based on an incomplete record. Specifically, petitioner argues that he was denied a fair appeal because appellate counsel failed to file with the state appellate court the transcripts from the first

trial, which ended in a mistrial.  *See Traverse*, at 68.  As noted by respondent, petitioner presented

this claim to the state courts in his direct appeal to the Ohio Supreme Court.  *See* Exhibit 6 to Return

of Writ.  The Ohio Supreme Court summarily denied leave to appeal and dismissed the appeal as

not involving any substantial constitutional question.  Exhibit 7 to Return of Writ.

The Ohio Supreme Court's summary dismissal of petitioner's appeal did not constitute a

decision on the merits of petitioner's claim.  *See* Ohio Supreme Court Rule of Practice III, Section

6;[8] Ohio Supreme Court Rule of Practice II, Section 1(A)(3).  Therefore,

---

[8]  Ohio Supreme Court Rule of Practice III, Section 6 provides in relevant part:

Determination of jurisdiction by the Supreme Court

After the time for filing jurisdictional memoranda has passed, the Supreme Court
will review the jurisdictional memoranda filed and determine whether to accept
the appeal and decide the case on the merits. If the appeal involves termination of
parental rights or adoption of a minor child, or both, the Supreme Court will
expedite its review and determination. If the appellee has filed a waiver in lieu of
a memorandum in response, the Supreme Court may review the memorandum in
support of jurisdiction and determine whether to allow the appeal before the
deadline for filing the memorandum in response. Upon review of the
memorandum in support of jurisdiction and notwithstanding the appellee's filing
of a waiver, the Supreme Court may direct the appellee to file a memorandum in
response before it decides whether to allow the appeal.

(A) If the appeal is a claimed appeal of right, the Supreme Court will do one of
the following:

(1) Dismiss the appeal as not involving any substantial constitutional question;

(2) Accept the appeal, and either order the case or limited issues in the case to be
briefed and heard on the merits or enter judgment summarily.

(B) If the appeal is a discretionary appeal involving a felony, the Supreme Court
will do one of the following:

(1) Deny leave to appeal, refusing jurisdiction to hear the case on the merits;

> there are simply no results, let alone reasoning, to which this court can defer. Without such results or reasoning, any attempt to determine whether the state court decision "was contrary to, or involved an unreasonable application of clearly established Federal law," 28 U.S.C. § 2254(d)(1), would be futile. If deference to the state court is inapplicable or inappropriate, we "exercise our independent judgment" and review the claim *de novo. Hain v. Gibson,* 287 F.3d 1224, 1229 (10th Cir.2002); *see also Cox v. Miller,* 296 F.3d 89, 101 (2nd Cir.2002) (noting that habeas claims are either subject to AEDPA standard or reviewed *de novo* ); *Moore v. Parke,* 148 F.3d 705, 708 (7th Cir.1998) (reviewing claim *de novo* once AEDPA deference found to be inappropriate).

*McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).  Under these circumstances, this Court conducts a *de novo* review of petitioner's ineffective assistance of counsel claim.  *Id.; see also Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005).

Nonetheless, the claim is plainly without merit.  Petitioner raised no issues on direct appeal that required review of the transcript of the first trial, which ended in a mistrial.  Claim two is without merit.

## IV.  CLAIM THREE

(2) Grant leave to appeal, accepting the appeal, and either order the case or limited issues in the case to be briefed and heard on the merits or enter judgment summarily.

(C) If the appeal is a discretionary appeal asserting a question of public or great general interest, the Supreme Court will do one of the following:

(1) Decline jurisdiction to decide the case on the merits;

(2) Grant jurisdiction to hear the case on the merits, accepting the appeal, and either order the case or limited issues in the case to be briefed and heard on the merits or enter judgment summarily.

In claim three, petitioner first asserts that the trial court erred in sentencing petitioner to a maximum term under O.R.C. §2921.331. Such claim presents only an issue of state law that is not appropriate for federal habeas corpus review.

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

Petitioner next asserts that his conviction on count four was against the manifest weight of the evidence and that the evidence was constitutionally insufficient to sustain this conviction.

The state appellate court addressed only the claim that the verdict was against the manifest weight of the evidence, which arises only under state law and is not appropriate for federal habeas corpus review:[9]

_____

[9] Under Ohio law, a claim that a verdict is against the manifest weight of the evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest

41

In his second assignment of error, appellant argues the jury's verdict as to count four, the failure to comply with the order or signal of a police officer, was against the manifest weight of the evidence. This count is a felony of the third degree, and requires the element of substantial risk of serious physical harm to persons or property. Appellant argues because the chase was only for a short amount of time and an extremely short distance, the State had failed to prove there was a substantial risk of serious physical harm to persons or property.

In considering a claim a conviction is against the manifest weight of the evidence, we must review the entire record, including the evidence and all reasonable inferences, and the credibility of witnesses, to determine whether the jury lost its way and created a manifest miscarriage of justice with its verdict, *State v. Thompkins,* 78 Ohio St.3d 380, *1997-Ohio-52,* 678 N.E.2d 541. Issues regarding the weight of the evidence and credibility of the witnesses are for the trier of fact to determine, *see State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

R.C. 2901.01 defines "substantial risk" as a strong possibility, as contrasted with the remote or significant possibility that a certain result may occur or that certain circumstances may exist. "Serious physical harm to persons" is defined as physical harm that carries a substantial risk of death, permanent incapacity or substantial temporary incapacity, *see* R.C. 2901.01. Likewise, "serious physical harm to property" includes substantial devaluation in property, substantial interference with the enjoyment of property, or repairs requiring a substantial amount of time, effort, or money, *see* R.C. 2901.01(A)(6).

Fortunately, no persons were injured during this incident. There was no property damage. However, as the trial court noted at the sentencing hearing, the reason the chase lasted less than a minute, and for so short a distance, was because the officers abandoned the chase because of the way appellant was operating his vehicle. Officer

miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982).  Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his conviction was against the manifest weight of the evidence cannot be considered by this Court.

Suici testified the driver ran stop signs, and some vehicles were coming in the opposite direction during the chase. The officer also testified the vehicle was going fast enough that when it hit the crown of the road it went airborne.

We find the determination appellant had violated R.C. 2921.331(C)(5)(a) is supported by the manifest weight of the evidence, and as such, the trial court did not err in entering a finding of guilty on the jury's verdict.

The second assignment of error is overruled.

Exhibit 5 to Return of Writ.

The factual findings of the state appellate court are presumed to be correct:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

The state appellate court did not address petitioner's federal constitutional claim of insufficiency of the evidence. Arguably, this Court must conduct a *de novo* review of petitioner's claim of insufficiency of the evidence.

Where the state court has not addressed or resolved claims based on federal law... the decision is not an "adjudication on the merits." Thus, a federal habeas court reviews such unaddressed claims *de novo. See McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir.2003) (distinguishing "no results" from no reasoning).

Where, however, the state court disposes of a constitutional claim but fails to articulate its analysis, the rule is less clear....

... We have held that a federal habeas court must conduct an

43

> independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000) (citing *Aycox v. Lytle,* 196 F.3d 1174, 1177-78 (10th Cir.1999)).
>
> The independent review, however, is not a full, *de novo* review of the claims. *Id.* As we held in *Harris,* the review remains deferential, because the court cannot grant relief unless the state court's result contradicts the strictures of AEDPA. *Id.*

*Howard v. Bouchard*, *supra*, 405 F.3d at 467; *see also Linscott v. Rose*, 436 F.3d 587, 592 (6ᵗʰ Cir. 2006)(federal habeas court conducts a *de novo* review where the state court failed to adjudicate merits of federal constitutional claim).  Regardless, however, of whether this Court conducts a *de novo* review or applies the more deferential standard of review required under the AEDPA, petitioner's claim that the evidence was constitutionally insufficient to sustain his conviction on count four of the indictment is without merit.

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility

of the witnesses. *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969. In determining whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. (quoting *Jackson*, at 326).

Petitioner was charged in count four with willfully eluding or fleeing a police officer after receiving a visible or audible signal from the police officer to bring his motor vehicle to a stop, causing a substantial risk of serious physical harm to persons or property, in violation of O.R.C. §2921.331(B). *See* Exhibit 1 to Return of Writ.

O.R.C. §2921.331(B) provides in relevant part:

> (B)No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

> (C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.

> \*\*\*

> (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

45

***

(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

*Id.*

"Substantial risk" is statutorily defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Serious physical harm to persons" and "serious physical harm to property" are both defined in R.C. 2901.01. That statute provides, in pertinent part, as follows:

(5) "Serious physical harm to persons" means any of the following: ···

"(b) Any physical harm that carries a substantial risk of death;

"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

"(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

"(6) "Serious physical harm to property" means any physical harm to property that does either of the following:

"(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

"(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time."

46

*State v. Dye*, 2005 WL 299817 (Ohio App. 5 Dist. February 4, 2005).

Petitioner argues that there was no evidence that he was the driver of the vehicle involved in the police chase or that he caused a "substantial risk of serious physical harm to persons or property," *see* §2921.331(C)(5)(a)(ii), and that the evidence, at most, established a mere possibility of harm. *Traverse*, at 72. Upon review of the record, this Court does disagrees.

Mary Corder, Charles Corder, and Tammy Lewis all knew petitioner and testified that they saw him late in the evening of September 16, 2002, driving a white Pontiac Grand Prix with a red pinstripe. *Transcript,* at 113, 119, 126, 129, 136, 139. Petitioner told Charles Corder that he had obtained the car from a friend. *Id.*, at 127. He told Lewis that he had purchased the car with the proceeds of property he sold in West Virginia. *Id.*, at 136. In fact, the car had been stolen that evening from Route 22 Auto Sales Limited. *Id*., at 81-93. Charles Corder wrote down the license plate of the car that petitioner was driving. It matched that of the car later chased by police. *Id*., at 128; 182. Later that evening, at approximately 12:30 a.m., Jeff Bagent called police when he saw a man removing items from a truck in the parking lot of AK Steel. *Id.*, at 158. When the police arrived, the man fled in a white Pontiac Grand Prix. *Id.,* at 163. Police gave chase with lights and sirens. *Id*., at 172. Lieutenant David Sucui with the Zanesville Police Department responded to a call regarding suspicious activity at the AK Steel parking lot at approximately 12:45 a.m. *Id.*, at 181. Sucui pulled in behind a white early 1990's model Pontiac Grand Prix. *Id.*, at 181-82. Sucui engaged in "hot pursuit" of the vehicle. *Id.,* at 182. The Pontiac was traveling at approximately 50-55 mph. *Id*., at 181-82. Sucui said the chase lasted "under a minute." *Id.*, at 183.

> I actually backed off the vehicle due to the fact that – the way the
> person was operating, it caused me to have some concerns for the –
> maybe some people in the area.

47

*Id.*, at 183.

> He went straight through [stop signs] and... he was going fast enough
> that when he hit the crown of the road I believe the vehicle went
> airborne.

*Id.*, at 188.  There were other vehicles in the area.  *Id.*  Patrolman Travis Groves said that the Pontiac was traveling at a "high rate of speed."  *Id.*, at 195.  According to Groves, the police chase lasted about five minutes.  *Id.*, at 197.  Eventually the vehicle came to a stop.  The driver exited and fled on foot.  *Id.*, at 189.  Police ordered the driver to halt.  *Id.*  Sergeant Pat Keck, a K9 handler with the Muskingum County Sheriff's Department, responded to a call from the Zanesville Police Department.  *Id.*, at 213-14.  About half an hour later, Keck came into contact with petitioner.  *Id.*, at 215-16.  Petitioner told Keck that he lived in the area and that his name was Bob.  *Id.*, at 217.  Petitioner was wearing the same black T shirt that Mary and Charles Corder and Tammy Lewis had described him as wearing earlier that night.  *Id.*, at 216.  Petitioner ran when Keck asked to speak with him.  *Id.*, at 217.  Keck found the black T shirt on the ground.  *Id.*, at 222-23.  Petitioner's DNA was identified on the T shirt found by Keck.  *Id*, at 254.  Petitioner denied any involvement in the foregoing events to police.  *Id.*, at 231.

In view of all of the foregoing and for the reasons discussed by the state appellate court, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, *See Jackson v. Virginia, supra*, the evidence is constitutionally sufficient to sustain petitioner's conviction.

Finally, petitioner asserts in claim three that he was denied a fair trial due to the admission of irrelevant and prejudicial character evidence, and police testimony and records.  Specifically,

petitioner complains that Mary Coder testified that, two days prior to the day in question, petitioner

hit her daughter's van with his car and refused to stop.  *Transcript* at 117.  Charles Corder testified

that petitioner said he had no driver's license.  *Id.,* at 128.  Tammy Lewis testified that petitioner had

lived at the Salvation Army facility the previous summer and that petitioner had hit her sister.  *Id.*,

at 134, 138.  *See* Exhibit 3 to Return of Writ.  Additionally, Kim Brown, a dispatcher for the

Zanesville Police Department, testified over defense objection that on September 16, 2002, at 11:09

p.m., she received a call from Tammy Lewis, who reported that Albert Tanner had just left her

mother's house and that he was going to go out and wreck the car he was driving.  Lewis said

Tanner was driving a white Beretta with the license plate number 6D8TS.  The car had "93" written

on the windshield.  *Id.,* at 150-52.

The state appellate court rejected this claim as follows:

> [A]ppellant argues the trial court erroneously admitted character
> evidence in violation of Evid. R. 404. Appellant claims the evidence
> was irrelevant, overly prejudicial, and portrayed appellant in a bad light.
>
> Evid. R. 404(B) provides evidence of other crimes, wrongs, or acts
> is not admissible to prove the character of a person in order to show
> he acted in conformity therewith, but it may be admissible for other
> purposes, such as proof of motive, opportunity, intent, preparation,
> plan, knowledge, identity, or absence of mistake or accident.
>
> The admission or exclusion of relevant evidence rests within the
> sound discretion of the trial court, *see State v. Sage* (1987), 31 Ohio
> St.3d 173, 510 N.E.2d 343. The Supreme Court has repeatedly
> defined the term abuse of discretion as implying the court's attitude
> is unreasonable, arbitrary, or unconscionable, *State v. Adams* (1980),
> 62 Ohio St.2d 151, 404 N.E.2d 144. Furthermore, defense counsel
> failed to object to most of the evidence and for this reason we must
> review this evidence under a plain error analysis pursuant to Crim. R.
> 52(B). Pursuant to the Rule, plain errors or defects affecting the
> substantial rights of the accused may be noticed even if they were not
> brought to the attention of the court.

49

Appellant argues the witness, Mary Corder, was permitted to testify about an incident where appellant had struck Corder's daughter's vehicle while it was parked at her house and then fled the scene.

The second witness, Charles Corder, testified appellant did not have a driver's license.

The State also called Tammy Lewis. Lewis testified appellant had once resided at the Salvation Army. In response to the prosecutor's question regarding why she had called the police, Ms. Lewis began to testify appellant had hit her sister. The prosecutor stopped Ms. Lewis.

The purpose of the State's examination of these three witnesses appears to be to establish the witnesses knew appellant and were not mistaken in identifying him. The witnesses also testified appellant had driven a different vehicle from the white Grand Prix.

As stated *supra,* these incidents were not objected to, with the exception of Mrs. Corder's testimony that appellant did not stop after striking her daughter's vehicle. Some of this testimony reveals a history between the witnesses and appellant, and could have inured to his benefit if the jury believed the witnesses were biased against him.

We find the trial court did not abuse its discretion in permitting the State to present this evidence.

\*\*\*

In his fourth assignment of error, appellant argues the trial court improperly allowed certain police testimony and records to come into evidence as "business records." Evid. R. 803 provides records in criminal cases regarding matters observed by police officers and other law enforcement personnel are not admissible unless offered by the defendant.

We find the admission of this evidence was error.

The State urges us to find this evidence is harmless beyond a reasonable doubt. In determining whether an error is harmless, we

> must examine the entire record to determine whether there was
> substantial evidence supporting the conviction, minus the disputed
> evidence, *see, e.g.*, *State v. Davis* (1975), 44 Ohio App.2d 335, 338
> N.E.2d 793.
>
> We have reviewed the record, and we find, disregarding the disputed
> evidence, there was still overwhelming evidence presented from
> which the jury could determine appellant was guilty.

Exhibit 5 to Return of Writ.[10]

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v.
Kassulke,* 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a
constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally
fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1983). When
such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether
the evidence was rationally connected to the crime charged.

This Court concludes, after review of the entire record, that petitioner was not denied a
fundamentally fair trial by admission of this challenged evidence. Brown's testimony was merely
cumulative with that of Tammy Lewis, who likewise stated that, on the night in question, she called
police after petitioner left her mother's house in a 1993 while Pontiac Grand Prix with a red
pinstripe. Lewis testified she gave police the license plate of the car that petitioner was driving,
which her brother had written down. *Id.*, at 138-141.

In short, claim three is without merit.

---

[10]  Respondent has not raised the issue of procedural default as to these particular issues
in claim three. Because this issue is an affirmative defense, *Trest v. Cain*, 522 U.S. 87, 89
(1997); *Gray v. Netherland*, 518 U.S. 152, 166 (1996), this Court will not further consider it.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that all of petitioner's claims, with the exception of his claim that his sentence violated *Blakely,* be **DISMISSED**. The Magistrate Judge further **RECOMMENDS** that the petition for a writ of habeas corpus be conditionally **GRANTED** on petitioner's claim that his sentence violated *Blakely*, and that petitioner's sentence be **VACATED** and petitioner released from incarceration unless the State of Ohio re-sentences him within ninety (90) days.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

November 29, 2006                              *s/Norah McCann King*
                                            Norah McCann King
                                        United States Magistrate Judge

52